UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PEDRO P.L.,

          Petitioner,

     v.

CHRISTOPHER CHESTNUT; et al.,

          Respondents.

No. 1:26-cv-03947-TLN-SCR

A # 201-571-083

**ORDER**

     This matter is before the Court on Petitioner Pedro P.L.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Respondents filed an Answer and Opposition to the Habeas Petition.  (ECF No. 6.)  For the reasons set forth below, Petitioner's Habeas Petition is GRANTED.[2]  (ECF No. 1.)

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    On May 29, 2026, the Court issued a minute order granting Petitioner's Habeas Petition and ordering his immediate release.  (ECF No. 7.)  This Order explains the Court's reasoning.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States on March 25, 2019, with his father when he was fifteen years old.  (ECF No. 1 at 2; ECF No. 6 at 5.)  Petitioner and his father were apprehended by Border Patrol and released on Orders of Recognizance on March 27, 2019.  (ECF No. 1-1 at 1–2; ECF No. 6 at 8–10.)  Petitioner is currently in removal proceedings and his application for asylum remains pending.  (ECF No. 1 at 2–3.)

Following his release into the United States, Petitioner developed ties to his community and worked with valid work authorization.  (*Id.* at 2–3, 5.)  Petitioner is now the father of a United States citizen child, who he supports financially and emotionally.  (*Id.* at 3.)  In 2022, Petitioner was arrested for being in possession of alcohol under the age of twenty-one.  (ECF No. 6 at 18.)  After posting bond, Petitioner was transferred to the custody of Immigration and Customs Enforcement ("ICE").  (*Id.* at 19.)  He was released again on another Order of Recognizance.  (*Id.* at 25–28.)

On January 14, 2026, Petitioner was stopped for a traffic-related offense in Collier County, Florida.  (*Id.* at 44.)  He was taken into local custody and then transferred to ICE custody after posting bond two days later.  (*Id.* at 45.)  Petitioner was initially detained at the "Alligator Alcatraz" detention facility in Florida.  (ECF No. 1 at 8.)  There, Petitioner appeared for a custody redetermination hearing but was denied release on bond upon the immigration judge finding the court lacked jurisdiction.  (ECF No. 1-2.)  Petitioner was subsequently transferred to the California City Immigration Processing Center.  (ECF No. 1 at 8.)

May 22, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the lawfulness of his civil detention.  (*Id.* at 12–16.)  Petitioner seeks immediate release.  (*Id.* at 19.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

2

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 12–13.)  In opposition, Respondents contend Petitioner has no liberty interest because he is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 6 at 2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

3

*Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause.  The government's decision to release Petitioner on recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  Respondents do not claim Petitioner violated the terms of his release.  Petitioner has lived in the United States for over seven years, during which time he pursued his asylum claim and built a life, worked, developed ties to his community, and became a father to a United States citizen child.  The time Petitioner spent released in this country and the meaningful community connections he appears to have made in that time create a powerful interest for Petitioner in his continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court is not persuaded by Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' position.  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."  *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025)

4

(collecting cases).  Respondents put forth no new arguments or facts justifying a different conclusion in this case.  Accordingly, the Court finds Petitioner is not subject to mandatory detention under § 1225(b)(2).  Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

### B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094.  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure his detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  As Respondents do not argue Petitioner is a danger to the public or a flight risk, Petitioner was previously found suitable for release on recognizance twice, and Petitioner has demonstrated ties to this country including his United States citizen child, the risk that he is being detained without proper justification is

5

exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention. He received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.[3]

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrates by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

2.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

///

---

[3]    Petitioner also claims his detention violates the Immigration and Nationality Act, Administrative Procedure Act, and Suspension Clause. (ECF No. 1 at 13–18.) As the Court concludes Petitioner's detention violates the Fifth Amendment Due Process Clause, the Court need not consider Petitioner's additional constitutional and statutory claims.

IT IS SO ORDERED.

Date: June 1, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE